IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff**

v.

RICARDO JOSE CALDERON-LOPEZ,

**Defendant**

**CRIMINAL NO.** 10-016 (JAG)

**SEALED MEMORANDUM AND ORDER**

On November 1, 2010, the Court issued an Order for Defendant's Hospitalization under 18 U.S.C. § 4241(d)(1). (Docket No. 64). Pursuant to said order, Ricardo José Calderón López ("Defendant") was committed to the custody of the Attorney General and hospitalized in a federal medical facility to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings in the instant criminal case to go forward. Under 18 U.S.C. § 4241(d)(1) a court may order the hospitalization of a defendant for a reasonable period of time, not to exceed four months.

On December 14, 2010, Defendant was admitted to the Federal Medical Center in Butner, North Carolina. (Docket No. 66). On April 5, 2011, a Forensic Evaluation was rendered by the medical

staff in charge of treating Defendant. In their professional opinion, there is substantial probability that his competency may be restored through involuntary treatment with antipsychotic medication. (Docket No. 69, p. 19).

On March 20, 2011, the Court ordered the Government and Defendant's counsel to file, within fourteen days, simultaneous briefs regarding the course of action suggested by the medical staff in light of Sell v. U.S., 539 U.S. 166 (2003). (Docket No. 70). On that same day, the Court ordered that Defendant's commitment to the custody of the Attorney General be extended for an additional period of three months pursuant to 18 U.S.C. § 4241 (d)(2) or until the Court ordered otherwise before said period expires. On May 9, 2011, the Government and Defendant's counsel submitted a joint informative motion in which they aver that Defendant they consider that Defendant must remain hospitalized and that he should be involuntarily treated in order to restore his competency.[1] (Docket No. 73). The Court must now determine if the involuntary treatment of Defendant's medical condition in order to render him competent to stand trial is proper.

---

[1] The Court had originally ordered the parties to file simultaneous briefs on the issue in light of Sell. However, given that they agreed with each other that the involuntary medication of Defendant is proper and given the specific facts of this case, the Court did not find it was necessary to insist upon the filing of individual briefs.

Criminal No. 10-016 (JAG)                                          3

The Supreme Court has recognized that citizens have a "significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs." Sell, 539 U.S. at 178 (citing Washington v. Harper, 494 U.S. 210, 221 (1990)(internal quotations omitted). In Harper, it was determined that a state has a legitimate and important interest in treating a prison inmate with medication and against his will if it does so in order to protect him and those around him and if the treatment is in their medical interest. Harper, 494 at 227. In Riggins v. Nevada, 504 U.S. 127 (1992), the Supreme Court decided that the involuntary treatment of a defendant with antipsychotic drugs in order to restore his competency to stand trial was not constitutionally permissible because the Nevada courts had failed to make a proper finding of the facts and circumstances that would have justified the setting aside of the defendant's liberty interests.

More than a decade later, in Sell, after analyzing its decisions in Harper and Riggins the Supreme Court listed four factors that a Court must consider when presented with a Government request for involuntary medication of a non-dangerous person (who can thus not be medicated under Harper) in order to render him or her competent to stand trial. The four factors are: (1) The relative importance of the Government's interest in bringing the person to trial; (2) whether the treatment is

Criminal No. 10-016 (JAG)                                          4

likely to render the defendant competent to stand trial without rendering the trial unfair; (3) whether there are less intrusive methods of achieving the same goal; and (4) whether involuntary medication is in the defendant's best medical interest. Id. at 180-182. In other words, a Court must ask, "[h]as the Government, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of antipsychotic drug treatment, shown a need for that treatment sufficiently important to overcome the individual's protected interest in refusing it?" Id. at 183. Therefore, it is this Court obligation to inquire whether there is a sufficient showing that the involuntary medication of the defendant in this case in order to render him competent to face the proceedings against him is more important than the protection of his liberty rights.

Even though the Forensic Evaluation Report does not include an analysis of the first prong of the <u>Sell</u> inquiry because it pertains to a strictly a legal question, and even though the parties did not specifically address it in the informative motion, the Court finds that the Government has a particularly special interest in prosecuting this case because of the type of crime involved and the circumstances in which it took place. The affidavit in support of the Criminal Complaint states that Defendant attempted to enter the building where this Court is

Criminal No. 10-016 (JAG)                                                5

located and refused to allow the Court Security Officer ("CSO") working the security checkpoint to search the contents of a large bag he was carrying. (Docket No. 1, Affidavit). He resisted the officers and struck one of them in the face, causing him to bleed from the nose and the mouth. The injured CSO was specially deputized by the U.S. Marshall Service. Therefore, Defendant assaulted and caused bodily harm to a federal officer in violation of 18 U.S.C. 111, which may carry an imprisonment term of up to 20 years. Evidently, the Government has a special interest of prosecuting this crime given that it took place in a federal building within the context of a security check and the victim is a federal officer. Furthermore, the violent nature of the crime in question supports a finding that there is a particular interest by the Government in prosecuting an individual who might pose a serious danger to the community.

   The Forensic Psychiatric Report does, however, explicitly address the remaining factors of the <u>Sell</u> decision. In relation to the second factor, the probability that the treatment will render a defendant competent, it states that there is extensive support in the psychiatric literature to conclude that individuals such as Defendant, who suffer from auditory hallucinations, delusional beliefs and cognitive disorganization, benefit from a reduction of said symptoms. This

Criminal No. 10-016 (JAG)                                                   6

in turn allows them to make "reasonable, rational and reality based decision regarding the processing of his legal charges." (Docket No 26, pp. 16-17). The experts also posit that the treatment is substantially unlikely to interfere with Defendant's ability to assist his attorney in preparing his Defense, which is one the situations the Supreme Court warned about in Sell. See Id. at 181.

Regarding the third prong, whether there are less intrusive treatments available, the report indicates that because Defendant is completely unaware that he suffers a mental condition, psychotherapy is not a viable course of treatment. Finally, the experts understand that the proposed treatment is in Defendant's best medical interest, which is the fourth factor to be analyzed, because he does not suffer any other condition that could be worsened by the use of the medication and he is not currently taking any other medication that could negatively interact with the treatment.

Given all of the above, and after a careful analysis of the Forensic Evaluation and the specific facts and circumstances surrounding this case, the Court finds that the Government has sufficiently demonstrated that following the course of treatment suggested in the Forensic Evaluation is proper in order to render Defendant competent to face the charges against him.

Criminal No. 10-016 (JAG)                                                7

According to the Forensic Report the restoration of Defendant's competency will take at least 120 days. Therefore, it is hereby

**ORDERED** that Defendant continue under the custody of the Attorney General, pursuant to 18 U.S.C. § 4241(d) for an additional period not to exceed four months in order to receive treatment with antipsychotic medication as suggested in the Forensic Report;

It is further **ORDERED** that the Federal Medical Center shall make a monthly report in writing to this Court regarding the results of the course of treatment, furnishing a copy to the United States Attorney, Torre Chardón Building, Suite 1201, 350 Carlos Chardón Street, Hato Rey, PR 00918; and to Defendant's counsel at the Federal Public Defender's Office, 241 Franklin D. Roosevelt Ave., Hato Rey, PR 00918-2441.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of May, 2011.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge